**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| MARVIN LEE BURDINE, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|    vs. | ) Cause No. 1:15-cv-345-WTL-MPB |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|   Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Marvin Lee Burdine requests judicial review of the final decision of Defendant Carolyn Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Burdine filed his application for DIB in July 2011, alleging disability beginning on December 31, 2010. His application was denied initially and upon reconsideration, whereupon he requested and was granted a hearing before an administrative law judge ("ALJ"). Burdine was represented by counsel at the video hearing, which was held on July 17, 2012, before ALJ Angela Miranda. Burdine and a vocational expert testified at the hearing. Thereafter, on January 23, 2013, the ALJ rendered her decision in which she concluded that Burdine was not disabled as defined by the Act. The Appeals Council reviewed the ALJ's decision and issued an affirmance on August 6, 2014. Burdine then filed this action for judicial review.

## II. EVIDENCE OF RECORD

The relevant evidence of record is aptly set forth in the ALJ's decision and Burdine's brief and need not be repeated here.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. ' 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. ' 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. ' 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. ' 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. ' 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. ' 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. ' 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

The ALJ found at step one that Burdine had not engaged in substantial gainful activity since his alleged onset date of December 31, 2010. At steps two and three, the ALJ found that Burdine had the severe impairments of "(1) right hip dysfunction described as advanced degenerative changes, hip space narrowing, enthesopathy of the iliac wings, ischial tuberosites, and osteoarthritis; (2) back dysfunction described as mild lumbar spondylosis; (3) obesity; and (4) a history of coronary artery disease with dyslipidemia, hypercholesterolemia, and hypertension," Record at 23, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Burdine had the residual functional capacity to perform light work with the following postural and environmental limitations:

3

> [T]he claimant has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying with the upper extremities and has the capacity for occasional operation of foot controls with the right leg/foot. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday. The claimant may require the ability to change position while at work but this can be met with normal break and meal periods. The claimant has the capacity to frequently balance and to occasionally stoop, kneel, crouch, and climb stairs and ramps. The claimant should not crawl. The claimant has no limitations in manipulative abilities. Environmentally the claimant should have only occasional exposure to wetness, vibration, and dust/fumes/other pulmonary irritants. The claimant should not have exposure to hazards such as uneven, steep including [sic] surfaces or unprotected heights. Despite the claimant's subjective complaints related to concentration, mentally the claimant has the capacity to understand, remember, and carry out multiple-step tasks. The claimant has the capacity to appropriately interact with supervisors, coworkers, and the general public. The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

*Id.* at 25. Given this residual functional capacity ("RFC"), the ALJ determined that Burdine was unable to perform his past relevant work as a journeyman roofer. At step 5, the ALJ determined that Burdine was able to perform representative occupations such as food order clerk, sorting machine operator, and polishing machine operator, and that those jobs existed in significant numbers in the national economy. Accordingly, the ALJ concluded that Burdine was not disabled as defined by the Act.

## V. DISCUSSION

Burdine argues that the ALJ erred in several respects. Each of his arguments is addressed, in turn, below.

### A. Errors Relating to Chronic Myelogenous Leukemia

Burdine first argues that the ALJ erred in failing to consider whether Burdine met or equaled Listing 13.06(B)[1] for chronic myelogenous leukemia ("CML"). Listing 13.06(B)(2)(a)

---

[1] All listings are found at 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

4

applies to CML and provides that a person is "[c]onsider[ed] under a disability until at least 12 months from the date of bone marrow or stem cell transplantation. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system." Burdine did not undergo a bone marrow or stem cell transplant; his CML was treated with Gleevec, a chemotherapy drug. Burdine argues that the ALJ should have considered whether he nonetheless equaled Listing 13.06 because he experienced (and continues to experience) significant side effects from Gleevec. However, the Listings further provide:

> How do we evaluate cancer treated by bone marrow or stem cell transplantation, including transplantation using stem cells from umbilical cord blood? Bone marrow or stem cell transplantation is performed for a variety of cancers. *We require the transplantation to occur before we evaluate it under these listings.* We do not need to restrict our determination of the onset of disability to the date of the transplantation (13.05, 13.06, or 13.07) or the date of first treatment under the treatment plan that includes transplantation (13.28). We may be able to establish an earlier onset date of disability due to your transplantation if the evidence in your case record supports such a finding.

Listing 13.00(L) (emphasis added). Therefore, the ALJ was correct in not evaluating Burdine under Listing 13.06 because it simply does not apply to a claimant who has not had a bone marrow or stem cell transplant.

As discussed further below, the Court agrees with Burdine that the ALJ failed properly to consider the side effects caused by his continued use of Gleevec. However, the Listings provide that in cases in which the treatment is successful—which, thankfully, Burdine's was—such side effects are not properly considered under the Listing for the underlying cancer.

> When the initial anticancer therapy is effective. We evaluate any post-therapeutic residual impairment(s) not included in these listings under the criteria for the affected body system. We must consider any complications of therapy. When the residual impairment(s) does not meet or medically equal a listing, we must consider its effect on your ability to do substantial gainful activity.

Listing 13.00(G)(4).

### B. Listing 1.02(A)

Burdine next argues that the ALJ erred in her consideration of Listing 1.02(A), which provides:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.00(B)(2)(b), in turn, provides:

> (1) Definition—Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

The ALJ's entire analysis of whether Burdine meets or equals Listing 1.02(A) consists of a summary of the Listing's requirements and the following sentence: "The medical evidence of the claimant's conditions [sic] right hip dysfunction do [sic] not establish the required motion limitations or an inability to ambulate effectively." Record at 24. This is inadequate. In fact, the

6

ALJ herself cites to numerous places in the record in which Burdine was found to have limited range of motion in his right hip. *Id.* at 26, 27 (citing April 27, 2011, exam by Dr. Friedlander finding "passive motion of the claimants right hip was limited compared to his left side"; Dr. Friedlander noting in May 2011 "continued limited range of motion"; consultative examiner in September 2011 observing "limited range of motion in the claimant's lumbar spine and right hip"; and Dr. Friedlander noting limitations with range of motion in November 2011). Therefore, there is ample evidence that Burdine had "signs of limitation of motion" in his right hip; if the ALJ believed those signs were not sufficient to satisfy the Listing, she should have explained why. Similarly, there is evidence in the record that Burdine's hip condition affected his ability to walk; accordingly, the ALJ should have analyzed that evidence and explained why she did not believe it satisfied the definition of the "inability to ambulate effectively." Accordingly, this case must be remanded for additional consideration of Listing 1.02(A).

## C. Credibility Determination

Next, Burdine argues that the ALJ's credibility determination is inadequate. The Court agrees.

As the ALJ correctly acknowledged, with regard to subjective symptoms such as pain, if a claimant has a medically determinable impairment that is reasonably expected to produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. ' 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of

7

your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. ' 404.1529(c)(2). Additionally, because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

Burdine testified that he had disabling symptoms, including fatigue and weakness caused by his chemotherapy medication and pain caused by his hip disorder. The ALJ recognized her obligation to "make a finding on the credibility/persuasiveness of the statements based on the consideration of the entire case record," Record at 25, and concluded that Burdine's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely persuasive for the reasons explained in this decision." *Id.* at 26. The problem is that the ALJ gave no specific reasons for finding Burdine's testimony about his disabling symptoms not credible. Instead, the ALJ summarized the medical evidence of record (which contains substantial objective evidence regarding Burdine's serious hip problem, including his treating physician's statement that he needs to undergo a hip replacement) and the various opinions in the record regarding Burdine's abilities; assigned Burdine's wife's statements "limited weight as the statements are not entirely supported by the objective medical evidence"; and then concluded that her own "residual functional capacity assessment is supported by the overall record." *Id.* at 28-29.

8

The problem with the ALJ's approach is that Burdine "*testified* that [he] is more limited [than the ALJ's RFC finding], and [his] testimony cannot be disregarded simply because it is not corroborated by objective medical evidence." *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (emphasis in original) (citations omitted). In this case, there is ample objective evidence that Burdine's hip condition is severe, so it is not clear why the ALJ believed his testimony about his pain was inconsistent with that evidence. The only other statement by the ALJ that could be construed as a reason for doubting Burdine's credibility is her observation that he "reported to treating physicians around the date of alleged onset of disability that his father's roofing business was closing for economic reasons, and he would thus be unemployed." Record at 29. In fact, Burdine testified that the business closed because "I got to where I couldn't perform the way that we needed to, to keep it going and then the economy was bad, too." *Id.* at 52. To the extent that the ALJ intended to imply that Burdine did not stop working because of his physical condition, but rather because his employer shut down, this is plainly contradicted by the ALJ's own determination that as of the alleged onset date Burdine could not perform work as a roofer. In other words, the ALJ herself found that Burdine's condition had degenerated to the point where he could no longer perform his job as a roofer, so the fact that he so testified cannot possibly be evidence of his lack of credibility.[2]

The ALJ did not give sufficient reason—indeed, any real reason—for discrediting Burdine. She also failed to address the side effects from Burdine's chemotherapy drugs and the impact of them on his ability to work. This was error that must be corrected on remand.[3]

---

[2] It is entirely plausible that Burdine's father continued to employ him even after he was no longer physically capable of performing the job, but then reached a point where he was financially unable to continue doing so. In fact, such a scenario would not be at all surprising.

[3] Burdine makes an argument regarding the ALJ's vocational analysis which he seems to (correctly) abandon in his reply brief in favor of arguing (again, correctly) that if the ALJ's

## V. **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 3/7/16

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

consideration of Burdine's side effects and pain leads to a change in the ALJ's RFC determination, that will require a reevaluation at step five.